**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN DOE<br>c/o Swartz Swidler LLC<br>9 Tanner Street<br>Haddonfield, NJ 08034 | CIVIL ACTION NO: |
| Plaintiff, | **COMPLAINT WITH JURY DEMAND** |
| v. | |
| TEMPLE UNIVERSITY<br>1801 N Broad Street<br>Philadelphia, PA 19122 | |
| Defendant. | |

## CIVIL ACTION COMPLAINT

Plaintiff John Doe (hereinafter "Plaintiff") by and through undersigned counsel hereby complains as follows against Temple University (hereinafter "Defendant").

## INTRODUCTION

1.     Plaintiff has initiated this action to redress violations by Defendant of the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964, Section 1981 of the Civil Rights Act of 1866, the Age Discrimination in Employment Act ("ADEA"),the Pennsylvania Human Relations Act ("PHRA"), and the Family Medical Leave Act ("FMLA"). Plaintiff worked for Defendant as a tenure-track assistant professor from 2012 through June 30, 2022. Plaintiff is a Chinese male who was over the age of 40 at the time his tenure was denied and Defendant terminated Plaintiff. Plaintiff also suffers from a serious health condition which constitutes a disability under the Americans with Disabilities Act because it is a permanent condition, which, when in non-remission, renders him completely unable to work or complete major life activities, and took an FMLA leave related to same from August 2016 through January

1

2017. In the Summer of 2021, Plaintiff requested a medical disability accommodation to teach remotely due to his disability and co-morbidities which may occur with COVID-19. This request was denied. Shortly thereafter, Plaintiff began his tenure application. As part of that application, Plaintiff provided a medical statement which explained his disability and his medical conditions. Plaintiff was recommended for tenure by outside reviewers, his department committee, his department chair, and the school committee. The Dean of Plaintiff's school then rejected these recommendations and instead recommended Plaintiff be denied tenure. Plaintiff then complained to Defendant's Equal Opportunity Compliance office, which refused to open a formal investigation but directed Plaintiff to complain directly to the Provost. Plaintiff did so on or around January 20, 2022. Shortly thereafter, the University Committee recommended against granting Plaintiff tenure, and that recommendation was followed by the Provost, then the President, and then the Board of Trustees, with the final rejection of the tenure application made on May 16, 2022. Having been denied tenure, Plaintiff was required to terminate his employment with Defendant, and Defendant accordingly terminated Plaintiff's employment on June 30, 2022. Defendant denied Plaintiff tenure and terminated Plaintiff because of Plaintiff's disabilities, because of his record of disability, because of his age, because of his race and national origin, because of his gender, because he previously took FMLA leave, in order to prevent Plaintiff from taking FMLA leave in the future, and in retaliation for his complaint of disability discrimination. As a result of Defendant's unlawful actions, Plaintiff has suffered damages.

## JURISDICTION AND VENUE

2.     The foregoing paragraphs are incorporated herein as if set forth in full.

3.      This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice.

4.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1331 because the claims herein arise under laws of the United States, the FMLA and the ADA. This Court has supplemental jurisdiction over the related state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

5.      Venue is properly laid in this judicial district pursuant to 28 U.S.C. Sections 1391(b)(1) and (b)(2), because Defendant resides in and/or conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth here in occurred in this judicial district.

6.      Plaintiff has exhausted all administrative prerequisites to his filing of this complaint.

## PARTIES

1.      The foregoing paragraphs are incorporated herein as if set forth in full.

2.      Plaintiff is an adult individual residing in the Commonwealth of Pennsylvania and can be reached through counsel.

3.       Plaintiff seeks to proceed under a pseudonym due to fear of harassment and retaliation, and intends to file a motion to proceed anonymously in conjunction with the filing of the instant complaint. Plaintiff will disclose his name to Defendant in a separate communication in conjunction with the Service of this Complaint.

4.      Defendant is a public-private "state-related" university within 15 separate schools and colleges and 5 separate professional schools which conducts business within the Commonwealth of Pennsylvania at the address set forth in the caption.

5.      At all times relevant herein, Defendant acted through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment/engagement with Defendant.

## FACTUAL BACKGROUND

6.      The foregoing paragraphs are incorporated herein as if set forth in full.

7.      Plaintiff is a Chinese American male who was over the age of 40 at the time he applied for tenure in the Fall of 2021.

8.      Plaintiff suffers from a serious chronic autoimmune medical condition which limits the normal functioning of his immune system and his musculoskeletal system (hereinafter his "disability").

9.      Plaintiff began working for Defendant as a tenure-track assistant professor for Defendant in July 2012.

10.     Under the terms of Plaintiff's collective bargaining agreement with Defendant, Plaintiff had up to seven years to earn tenure, and was required to be reviewed for tenure no later than the sixth year of the tenure-track probationary period, subject to extension of the tenure probation clock for approved medical or family leaves.

11.     Plaintiff had received three extensions of this tenure probationary period, for family leave taken in 2015-2016, medical leave taken in 2017-2018, and a University-wide one-year extension due to COVID-19 from 2020-2021.

4

12.     From August 2016 through January 2017, Plaintiff took a continuous FMLA leave due to a flare-up of his disability and the need to remove a tumor.

13.     After he returned to work in January 2017, he continued to suffer from symptoms of his disability and its treatment: these symptoms and treatment effects did not interfere with his ability to complete the essential functions of his job, including but not limited to teaching a full course-load and continuing his research; however, during this period, his ability to engage in research at his fullest capacity was somewhat limited.

14.     By mid-2018, Plaintiff had made a full recovery and was in pharmacological remission, and could both teach and research at his full capacity.

15.     Plaintiff first applied for tenure in the Fall of 2019, and experienced similar discrimination. Plaintiff ultimately withdrew his application.

16.     On August 2, 2021, Plaintiff requested a medical accommodation for his disability, to teach his courses online, due to concern based on his disability and its interaction with COVID-19.

17.     Defendant, by and through the Dean of Plaintiff's school, denied Plaintiff's accommodation request on August 13, and required Plaintiff to teach in-person, which Plaintiff did.

18.     In the Fall of 2021, Plaintiff applied for tenure a second time.

19.     As part of this application, Defendant agreed that it would use the 2018 tenure standards to assess Plaintiff's candidacy.

20.     As part of this tenure application, Plaintiff provided the tenure committee with a medical statement which outlined his disability, his 2016-2017 FMLA leave, and his post-FMLA symptoms and recovery, and provided the committee with his physician's contact information.

21.     Defendant's tenure application procedure has the following nine steps: (1) External Review; (2) Department Committee review; (3) Department Chair review; (4) School Committee review; (5) Dean of School review; (6) University committee review; (7) Provost review; (8) President review; (9) Board of Trustees review.

22.     The External Reviewers, Department Committee, and Department Chair, School Committee all strongly recommended Plaintiff be granted tenure.

23.     On January 12, 2022, the Dean recommended Plaintiff be denied tenure.

24.     The Dean who recommended Plaintiff be denied tenure is the same whose office denied Plaintiff's request for a medical accommodation made in August 2021.

25.     The Dean's recommendation to deny tenure referenced Plaintiff's FMLA medical leave, criticized an "inconsistency" in the pace of Plaintiff's publications, and falsely stated the External Reviewers had issues with Plaintiff's work when in they had all strongly recommended Plaintiff for tenure.

26.     The Dean also counted Plaintiff's publications in a more prejudicial manner than the publications of three non-disabled comparators were counted in 2017, 2019, and 2022, in three tenure or promotion applications in which the Dean was involved.

27.     Two of these three comparators shared the same national origin and race as Plaintiff, i.e., Chinese/Asian, but were female, while the third comparator was a Russian/Caucasian and male.

28.     The Dean also used Defendant's 2020 Tenure guidelines instead of the 2018 Tenure guidelines Defendant had agreed Defendant would use.

29.     As a result of the Dean's negative recommendation, on January 19, Plaintiff attempted to file a disability discrimination complaint with Defendant's Equal Opportunity Compliance Office. The Director of that office told Plaintiff he should not open a complaint but should simply contact the Provost.

30.     Plaintiff contacted the Provost's office on January 20, 2022, and complained about irregularities in the Dean's recommendation, identified his disability by name, and stated that he believed the Dean's negative recommendation against tenure was motivated by disability discrimination.

31.     The Vice Provost who responded ignored Plaintiff's allegation of disability discrimination other than to state he understood Plaintiff had significant health issues, but it was up to Plaintiff if and how he wanted to include those as context in Plaintiff's response. The Provost was copied on this response, and also received a copy of Plaintiff's original complaint complaining that the recommendation against tenure was motivated by disability discrimination.

32.     On January 31, Plaintiff submitted a rebuttal to the Dean's recommendation, complaining of the above irregularities and, pursuant to the Vice Provost's suggestion, describing his disability for the Committee.

33.     On February 11, the University Committee Tenure and Promotion Advisory Committee ("University Committee") adopted the Dean's recommendation, and voted against recommending tenure.

34.     In that report, the Committee noted that Plaintiff's medical condition "affected his ability to conduct and publish research."

35.     On February 18, Plaintiff wrote a rebuttal to the Committee's negative recommendation, and, *inter alia,* questioned how exactly Plaintiff's disability and the Committee's

conclusion that it had affected Plaintiff's research ability informed the Committee's recommendation to deny tenure.

36.     On March 30, the Provost issued his recommendation to deny Plaintiff tenure.

37.     On May 10, Plaintiff initiated an EEO complaint alleging *inter alia* that he had been denied tenure because of disability. But did not receive any follow up response.

38.     On May 12, 2022, Defendant formally informed Plaintiff that he had been denied tenure and that his appointment and employment would end on June 30, 2022.

39.     Plaintiff and his union initiated a grievance related to the denial of his tenure on June 13, 2022.

40.     On July 15, 2022, Defendant denied Plaintiff's grievance.

41.     Consistent with same, Defendant terminated Plaintiff on June 30, 2022.

42.     Defendant used Plaintiff's prior FMLA leave as an impermissible criteria to reject his tenure application, because it considered the period of such leave in assessing Plaintiff's productivity.

43.     Specifically, a professor from Plaintiff's department who presented to the School Committee argued that Plaintiff's publication record was "unproductive" based on his length of time working at Temple, and included the period of Plaintiff's FMLA leave in that calculation.

44.     This same professor in this report also compared Plaintiff unfavorably with younger candidates.

45.     This professor's comments formed the basis of the minority opinion of the School Committee which was adopted by the Dean, University committee, and Provost in recommending Plaintiff not be granted tenure and be terminated.

46.     Defendant also denied Plaintiff tenure and terminated him because of his gender, race and national origin (Male, Asian and Chinese) because Defendant had other tenured male Chinese professors and it did not want additional tenured professors with that same gender, racial and national background.

47.     Defendant denied Plaintiff tenure and terminated him due to his disability, his record of disability, because of his age, because of his race and national origin, because of his gender, because he had taken an FMLA leave, to prevent Plaintiff from taking additional FMLA leaves in the future, and in retaliation for his complaint that he had been subjected to disability discrimination.

48.     As a result of Defendant's unlawful actions, Plaintiff has suffered damages.

**COUNT I**
**Violations of the Americans With Disabilities Act ("ADA")**
**(Disability/Record-of-Disability Discrimination)**

49.     The foregoing facts are incorporated herein as if set forth in their entirety.

50.     At all times relevant herein, Defendant is and continues to be an "employer" within the meaning of the ADA.

51.     At all times relevant herein, Plaintiff was employed by Defendant as an "employee" within the meaning of the ADA.

52.     At all times relevant herein, Plaintiff suffered from a "disability" within the meaning of the ADA.

53.     Defendant had a record of Plaintiff's disability based on his FMLA requests, the extension of his tenure probation period, and his tenure application and submissions which disclosed and explained his history of his disability.

54.     The ADA prohibits employers, such as Defendant, from terminating or failing to hire or promote an employee because of their disability.

55.     The ADA also prohibits employers, such as Defendant, from terminating or failing to hire or promote an employee because they have a record of a disability.

56.     Defendant denied Plaintiff tenure and terminated him because of Plaintiff's disability and because of Plaintiff's record of a disability.

57.     Defendant's actions constitute violations of the ADA.

**COUNT II**
**Violations of the ADA**
**(Retaliation)**

58.     The foregoing facts are incorporated herein as if set forth in their entirety.

59.     In August 2021, Plaintiff requested an accommodation from the Dean of his School for his medical condition, which the Dean denied.

60.     Plaintiff began his tenure application shortly thereafter.

61.     On January 12, 2022, the Dean recommending denying Plaintiff's tenure application.

62.     The Dean denied Plaintiff's tenure application because Plaintiff had requested an accommodation for his disability.

63.     On January 10, 2022, Plaintiff complained of disability discrimination in connection with his tenure application to Defendant, including to the Provost who would be reviewing his tenure application, on or around January 20, 2022.

64.     On March 30, 2022, the Provost determined that he would recommend deny Plaintiff's tenure application.

65.     Subsequently, the President and Board of Trustees adopted the Provost's recommendation and denied Plaintiff tenure, thereby terminating him.

66.     Defendant's denial of Plaintiff's tenure application and termination of Plaintiff's employment was done in retaliation for Plaintiff's complaint of disability discrimination and for his requesting an accommodation for his disability.

67.     Defendant's actions constitute violations of the ADA.

### COUNT III
### <u>Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")</u>
### (Race, National Origin, and Gender Discrimination)

68.     The foregoing paragraphs are incorporated herein as if set forth in full.

69.     Defendant treated Plaintiff less favorably than individuals who differed from his race, national, origin, and gender combination with regards to his tenure application as to the grounds Defendant claims it used to deny Plaintiff tenure, i.e., frequency and quality of publications.

70.     Defendant refused to grant Plaintiff tenure and promotion and instead fired Plaintiff because Defendant was using an unlawful gender-race-national-origin quota system in terms of the diversity of Plaintiffs' department, and Plaintiff's department already had a number of Chinese male associate professors.

71.     Accordingly, Defendant denied Plaintiff tenure and promotion and terminated Plaintiff because of his race (Asian), his national origin (Chinese), and his gender (male).

72.     Defendant's actions constitute violations of Title VII.

### COUNT IV
### <u>Violations of Section 1981 of the Civil Rights Act of 1866</u>
### (Race/Ethnicity Discrimination)

73.     The foregoing paragraphs are incorporated herein as if set forth in full.

74.     Defendant denied Plaintiff tenure and promotion and terminated Plaintiff because of his race (Asian) and ethnic background (Chinese).

75.     Defendant's actions constitute violations of Section 1981.

**COUNT V**
**Violations of the Age Discrimination in Employment Act ("ADEA")**
**(Age Discrimination)**

76.     The foregoing paragraphs are incorporated herein as if set forth in full.

77.     Plaintiff was over 40 at the time he applied for tenure in 2021.

78.     Defendant denied Plaintiff tenure and promotion and terminated Plaintiff because of his age and because of Defendant's preference for younger professors and professors who have made their achievements at a younger age.

79.     Defendant's actions constitute violations of the ADEA.

**COUNT VI**
**Violations of the Family Medical Leave Act ("FMLA")**
**(Retaliation/Interference)**

80.     The foregoing paragraphs are incorporated herein as if set forth in full.

81.     Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. Section 2611(2)(a)(i)(ii).

82.     Plaintiff suffered from a chronic serious medical condition which, when active, incapacitated him from working.

83.     Defendant is an eligible employer under the FMLA.

84.     Plaintiff took an FMLA leave in 2016-2017 due to his serious medical condition.

85.     Plaintiff was eligible to take an additional FMLA leave to the extent his serious health condition flared-up again.

86.     Defendant used Plaintiff's taking of FMLA leave as a determinative reason for denying Plaintiff tenure and promotion and terminating Plaintiff.

87.     Defendant denied Plaintiff and terminated Plaintiff in order to prevent Plaintiff from taking additional FMLA leave.

88.     Defendant interfered with Plaintiff's FMLA rights by considering his FMLA-qualifying leave of absence in making the decision to terminate him.

89.     Defendant interfered with Plaintiff's FMLA rights by firing him to prevent him from taking further FMLA-qualifying leaves.

90.     These actions constitute violations of the FMLA.

**COUNT VII**
**Violations of the Pennsylvania Human Relations Act ("PHRA")**
**(Disability Discrimination)**

91.     The foregoing facts are incorporated herein as if set forth in their entirety.

92.     At all times relevant herein, Defendant is and continues to be an "employer" within the meaning of the PHRA.

93.     At all times relevant herein, Plaintiff was employed by Defendant as an "employee" within the meaning of the PHRA.

94.     At all times relevant herein, Plaintiff suffered from a "disability" within the meaning of the PHRA.

95.     The PHRA prohibits employers, such as Defendant, from terminating an employee on the basis of disability.

96.     Defendant violated Plaintiff's rights under the PHRA by denying him tenure and terminating him due to his disability.

97.     Defendant's actions constitute violations of the PHRA.

**COUNT VIII**
**Violations of the PHRA**
**(Disability-Related Retaliation)**

13

98.     The foregoing facts are incorporated herein as if set forth in their entirety.

99.     Plaintiff requested a reasonable accommodation for his disability in August 2021, which was denied.

100.    Plaintiff complained of disability discrimination in connection with his tenure application in January 2022.

101.    Shortly thereafter, Defendant denied Plaintiff's tenure application and terminated him.

102.    Plaintiff's request for accommodation and his disability discrimination complaint were determinative reasons for the denial of his tenure and his termination.

103.    Defendant's actions constitute unlawful retaliation in violation of the PHRA.

**COUNT IX**
**Violations of the PHRA**
**(Race/Gender/National Origin)**

104.    The foregoing facts are incorporated herein as if set forth in their entirety.

105.    Defendant denied Plaintiff tenure and promotion and terminated him because of his race (Asian), his national origin (Chinese), and his gender (male).

106.    Defendant's actions constitute violations of the PHRA.

**COUNT X**
**Violations of the PHRA**
**(Age Discrimination)**

107.    The foregoing facts are incorporated herein as if set forth in their entirety.

108.    Defendant denied Plaintiff tenure and promotion and terminated him because of his age.

109.    Defendan''s actions constitute violations of the PHRA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.      Defendant is to be prohibited from maintaining its illegal policy, practice, or custom of discriminating against employees or prospective employees based on their Disability;

B.      Defendant is to reinstate Plaintiff with tenure and promotion;

C.      Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to lost past earnings and future lost earnings;

D.      Plaintiff is to be awarded punitive damages in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious, and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

E.      Plaintiff is to be awarded damages for emotional distress and/or pain and suffering and is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

F.      Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable law; and

G.      Plaintiff's claims are to receive a trial by jury.

<div style="margin-left:40%">

Respectfully submitted,

**SWARTZ SWIDLER, LLC**

s/ *Joshua S. Boyette*
Joshua S. Boyette, Esq.
9 Tanner Street, Suite 101
Haddonfield, NJ 08033
Phone (856) 685-7420
Fax (856) 685-7417

</div>

Dated:  November 10, 2023