IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **XU HAN** : | |
| : | |
| *Plaintiff*, : | |
| : | |
| v. : | Civil Action No. 2:23-cv-4433 |
| : | |
| **TEMPLE UNIVERSITY** : | |
| : | |
| *Defendant.* : | |
| : | |

**TEMPLE UNIVERSITY'S REPLY BRIEF IN SUPPORT OF ITS**
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

Dated: June 3, 2025

*/s/ Michael J. Fortunato*
Michael J. Fortunato, Esquire
PA ID No.: 58917
mfortunato@rubinfortunato.com
Rachael Luken Carp, Esquire
PA ID No.: 201585
rcarp@rubinfortunato.com
Domenica B. Tomasetti, Esquire
PA ID No.: 333913
dtomasetti@rubinfortunato.com
1200 Liberty Ridge Drive
Suite 220
Wayne, PA 19087
Telephone (610) 408-2005/2010/2045
Facsimile (610) 854-4305/4329/4304

*Attorneys for Defendant Temple University – of the Commonwealth System of Higher Education*

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. LEGAL SUPPORT ......................................................................................................... 2

    A.    The Evidence Dr. Han Cites Does Not Establish a Genuine Dispute, Necessitating Judgment on His Gender, Race, and National Origin Discrimination Claims. ............................................................................................................... 2

        1.    Dr. Han's Comparators Do Not Support His Claims of Gender, Race, Or National Origin Discrimination. .......................................................................... 2

        2.    The Record Does Not Reflect That Temple Sought to Replace Dr. Han With A "More-Diverse" Candidate. ........................................................... 3

    B.    Dr. Han's Arguments Regarding Pretext and Causation Lack Evidentiary Support. ............................................................................................................. 5

    C.    A "Cat's Paw" Theory of Liability Is Not Applicable. ............................................. 7

        1.    Kent Did Not Act with Discriminatory Animus Towards Dr. Han. ............... 8

        2.    The Decision Not to Allow In-Person Meetings with the Candidates Does Not Create a Dispute of Material Fact Concerning Pretext. ................ 9

        3.    Dr. Sarkar's Decision Not to Inform the External Reviewers of Dr. Han's Medical Condition is Not Evidence of Pretext. .......................................... 9

        4.    Dr. Han Was Given the Opportunity to Address His Belated Disclosure to the Provost. .................................................................................................. 11

    D.    Plaintiff's Spoliation Argument Is Not Evidence of Discriminatory Intent. ....... 11

III. CONCLUSION ............................................................................................................ 12

## TABLE OF AUTHORITIES

Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992) .......................... 8

Laverty v. Drexel Univ. 2016 U.S. Dist. LEXIS 6909, at *23 (E.D. Pa. Jan. 21, 2016) .............. 12

McKenna v. City of Philadelphia, 649 F.3d 171, 177 (3d Cir. 2011) ............................................ 8

McLintock v. City of Philadelphia, 504 F. Supp. 3d 411, 424-425 (E.D. Pa. 2020) ...................... 4

Musa v. Soar Corp., 2014 U.S. Dist. LEXIS 161598, at *18 (E.D. Pa. Nov. 18, 2014 .................. 4

Reed v. Agilent Technologies, Inc., 174 F.Supp.2d 176, 185 (D. Del. 2001) ................................ 4

Staub v. Proctor Hospital, 562 U.S. 411 (2011) ........................................................................... 7

**I.     INTRODUCTION**

Dr. Han fatally overpled his case.  Unable to develop a successful tenure dossier, Dr. Han claimed that his lack of success must have resulted from discrimination because of his age, or his race, or his national origin, or his sex, or his medical leaves, or his disability.  Now, faced with having to drum up a dispute of material facts to support each of these causes of action, in his revised *Opposition to Defendant's Motion for Summary Judgment* ("*Opposition*") [Doc. 43], Dr. Han essentially has abandoned the age claim and spends a mere three of 29 pages on his sex, race, and national origin claims.  The lack of meaningful argument to support these claims strengthens Temple's position that Dr. Han cannot establish the essential elements of his age, sex, race, or national origin claims or evidence of pretext based on the undisputed material facts in the record.  Those claims can be disposed of quickly.

Left with only his FMLA and disability claims, Dr. Han has attempted to conjure disputed facts where none exist.  Despite his efforts, the record contains no genuine disputes of *material* facts concerning these claims.  Dr. Han's arguments regarding pretext and causation are haphazard and misguided.  His "cat's paw" theory is misapplied.  He has garnered no consequential evidence of discriminatory animus or discriminatory intent.  He has introduced neither disputed nor undisputed material facts supporting the *prima facie* elements of his disability or FMLA claims, nor has he demonstrated pretext.  For all of these reasons, Temple is entitled to judgment as a matter of law.

## II.  LEGAL SUPPORT

### A.  The Evidence Dr. Han Cites Does Not Establish a Genuine Dispute, Necessitating Judgment on His Gender, Race, and National Origin Discrimination Claims.

#### 1.  Dr. Han's Comparators Do Not Support His Claims of Gender, Race, Or National Origin Discrimination.

In the perfunctory discussion of his gender, race, and national origin discrimination claims, Dr. Han baldly argues that Temple discriminated against Asian men of Chinese national origin. He believes that, if he were a woman, this additional minority status would have offset the alleged disfavor shown towards Chinese Asians. He argues that Dean Ronald Anderson ("Anderson") and Associate Dean Aubrey Kent ("Kent") demonstrated a preference towards hiring non-Asian minorities and women (*Opposition* at 25-26). However, these allegations have no factual support. The undisputed facts show that Temple has granted tenure to Chinese/Asian men and to Chinese/Asian women and has denied tenure to white women – and it has done so based on their work product and not their race, gender, or national origin. Specifically:

- Race Plus/Sex Plus

    o Dr. Han testified that two of his Chinese male colleagues who applied for tenure both received tenure. Id. at 54:11-14. The granting of tenure to these two applicants, individuals of the same sex, the same race, and the same national origin, discredits Dr. Han's race plus/sex plus theory.

- Race/Nationality

    o Dr. Han's *Opposition* alleges that Temple treated Asian men and white men unfavorably due to their lack of minority status. However, he introduces Dr. Oleg Rytchkov ("Dr. Rytchkov"), a white male who took FMLA leave, yet still received

2

tenure, as a comparator.  See *Opposition* Exhibit 4; see also Exhibit 1: Han Tr. (10/16/2024) at 266:1-24; 267:1-24; 268:1-24; 269:1-24.

- o  Similarly, Connie Mao and Crystal Kong, both of whom are Chinese, Asian females, were both granted tenure.  See SOF Exhibit A: Han's Tr. at 270:16-24; 271:1-24; 273:21-24; 274:1-20; 275:11-24; 276:1-23.
- o  These comparators sink Dr. Han's race and national origin discrimination claims.

- Gender:
  - o  Temple denied tenure to Jacqueline Volkman-Wise, a white female, during the 2019-2020 tenure application period, thereby undermining Dr. Han's contention that – if he were female – Temple would have granted him tenure.  Id. at 278:22-24; 279:1-4.
  - o  During the same tenure application year, Temple denied tenure to Charlotte Ren, an Asian female, undermining Dr. Han's theory that if he were an Asian female, Temple would have granted him tenure.  Id. at 279:11-24; 280:1.

These facts are undisputed, and Dr. Han has presented no additional material facts to disrupt the conclusion that Temple is entitled to summary judgment on Dr. Han's race, gender, and national origin discrimination claims.

### 2.  The Record Does Not Reflect That Temple Sought to Replace Dr. Han With A "More-Diverse" Candidate.

Dr. Han's *Opposition* points to mischaracterized e-mail traffic that he claims raises a dispute of material facts supporting his allegations of race and national origin discrimination.  In February 2020, Dr. Edo Airoldi of the Statistics Department, contacted the Dean's Office regarding Hedibert Lopes, a candidate the Department had an interest in hiring.  See SOF Exhibit YY.  Dr. Airoldi did not state Lopes would be a great hire *because* he is a double minority candidate, as falsely stated in Plaintiff's *Opposition*.  Rather, the e-mail detailed the quality of

3

Lopes' research (including more than seventy publications), visibility in the field, and he just so "happens to be a double minority candidate." See Exhibit ZZ; see also Plaintiff's SOF ¶ 39. Dr. Han's mischaracterization of this e-mail does not generate a disputed issue of material fact.

Temple has an Affirmative Action Program and an established committee to discuss diversity-related issues. See SOF Exhibit D at 5. The existence of a policy promoting diversity is not itself evidence of discrimination. See McLintock v. City of Philadelphia, 504 F. Supp. 3d 411, 424-425 (E.D. Pa. 2020). Kent's e-mail discussion with Dr. Airoldi in June 2022 regarding another minority candidate simply confirmed that the University's primary considerations were the candidate's publications, current faculty position, and pending grants. See SOF Exhibit GGG. Dr. Airoldi mentioned that this minority candidate had "a bunch of A's [publications] already" and an external research grant. Id. Temple showed strong interest in the candidate's research achievements. See Musa v. Soar Corp., 2014 U.S. Dist. LEXIS 161598, at *18 (E.D. Pa. Nov. 18, 2014) (citing Reed v. Agilent Technologies, Inc., 174 F.Supp.2d 176, 185 (D. Del. 2001) (holding that a plaintiff must demonstrate that the employer's approach to diversity has a negative impact on his individual employment status. The existence of a policy promoting diversity awareness is not evidence of discrimination)). Further, there is no evidence that Temple actually hired this candidate or that he actually replaced Dr. Han. Indeed, one of the e-mails Plaintiff relies upon in his Opposition states that Fox was considering a candidate who would have "compliment[ed]" Han had Han remained at Temple – *not* replaced him. See SOF Exhibit GGG. In short, these emails do not present any disputed material facts that would prevent Temple from obtaining summary judgment or that create an inference of discrimination against Chinese or Asian candidates.

### B. Dr. Han's Arguments Regarding Pretext and Causation Lack Evidentiary Support.

Dr. Han clings to phrases such as "divergent assessments," "inconsistent rationales," "procedural irregularities," and "inconsistent publication standards" to whip up disputes where none exist. However, borrowing buzz words from court decisions is not tantamount to establishing genuinely disputed material facts. For instance, Dr. Han has failed to demonstrate that his comparator, Dr. Rytchkov, was similarly situated. Dr. Han compares Anderson's tenure recommendation for Dr. Rytchkov when Anderson was the Department Chair of the Finance Department and Anderson's recommendation against tenure for Dr. Han while he was the Dean of the Fox School of Business to argue pretext. However, the undisputed facts demonstrate that the circumstances surrounding Anderson's recommendations concerning these two applicants differ in significant respects.

- First, Dr. Rytchkov applied for tenure in 2016 under the 2011 tenure Guidelines and should not be compared to a tenure application evaluated under the 2018 Guidelines. See *Opposition* Exhibit 4.

- Second, due to family considerations, Dr. Rytchkov took a one-year extension to his tenure clock. Even with the extension, Anderson recommended tenure for Dr. Rytchkov, undermining Dr. Han's FMLA retaliation claims.

- Third, Anderson noted in his recommendation letter for Dr. Rytchkov that all of his publications occurred "in the last six years" which suggested to Anderson that his productivity was on an upward trajectory. Id. Dr. Han's publication record showed no upward trajectory. See SOF Exhibit M; see also SOF Exhibit F.

- Fourth, Dr. Han incorrectly argues that Anderson gave Dr. Rytchkov credit for a solo authored paper, but denied this consideration to Dr. Han. The undisputed facts establish that

5

    in his 2022 recommendation letter for Dr. Han, Anderson acknowledged the single solo authored paper and lead authored paper, as well as two papers under peer review. See SOF Exhibit F. Notably, Dr. Rytchkov had *four* solo authored papers in the Journal of Finance, a journal where only 3% of the publications are solo authored. See *Opposition* Exhibit 4.

- Fifth, Anderson was a professor and the Chair for the Department of Finance for Dr. Rytchkov's application, not the Dean of the business school. The role of the Department Chair differs from that of the Dean. Just as Dr. Sarkar, in his role as the Department Chair, provided Dr. Han with a supportive recommendation and endorsed him at in-person committee meetings, so too did Anderson support his Department candidate. The Dean, by comparison, is responsible for the Fox School as a whole, including fields outside of his personal expertise. Comparing Anderson's recommendation of a candidate in his own Department, while in very different role, to his evaluation of a candidate as the Dean is comparing apples to oranges and does not generate a disputed issue of material fact sufficient to prevent dismissal.

- Lastly, the contention that Anderson should have considered journal sources, such as the AGJ,[1] outside of Temple's tenure guidelines is nonsensical. When Anderson consulted the AGJ during Dr. Rytchkov's application process, he was the Department Chair. Part of the Department Chair's role in the tenure process is to enlighten the committee members in other fields of study on the candidate's research profile. The Dean's role is different.

---

[1] The AGJ is the Academic Journal Guide. See Plaintiff's *Opposition* Exhibits 2 and 3.

### C. A "Cat's Paw" Theory of Liability Is Not Applicable.

Relying on one comment uttered in January 2022 unrelated to any tenure application, Dr. Han attacks non-decisionmaker Kent under a "cat's paw" theory – arguing that it creates a disputed issue of material fact as to his disability discrimination claim.[2] Dr. Han argues that his disability discrimination claim should not be dismissed because (1) Kent displayed discriminatory bias towards Dr. Han and "had the Dean's ear," becoming a *de facto* decisionmaker in the application review process; and (2) every level of promotion and tenure review above the Dean rubber-stamped the Dean's opinion (*Opposition* at 8-9; 11-16). This argument fails for two reasons. First, Dr. Han essentially concedes that each participant in the review process after the Dean (the Provost, University Promotion and Tenure Committee ("UPTAC"), President, and Board of Trustees) did not display discriminatory animus towards Dr. Han in the tenure application process.

Second, the record reflects that individuals at the highest levels of the tenure review process exercised independent judgment and have reached different decisions on tenure. For example, Fox faculty member, Dr. Taha Havakhor, also was up for tenure in 2021-2022. The facts establish that Anderson recommended *denying* tenure to Dr. Havakhor. See Exhibit 2: Mandel Tr. (11/21/2024) at 24:8-13. However, Provost Mandel came to the opposite conclusion after reviewing Dr. Havakhor's tenure application and recommended *granting* Dr. Havakhor tenure. Id. at 23:9-12. Provost Mandel came to a different conclusion from Anderson on a tenure candidate the *same* year Dr. Han applied. Therefore, the "cat's paw" theory does not save Dr. Han's disability discrimination claims because the record demonstrates that the Provost,

---

[2] Dr. Han misquotes Staub v. Proctor Hospital, 562 U.S. 411 (2011) on page 8 of his *Opposition*. This quote is not accurate and is not contained within the Supreme Court's opinion.

7

UPTAC, President, and Board of Trustees did not simply rubber-stamp Anderson's recommendations. See McKenna v. City of Philadelphia, 649 F.3d 171, 177 (3d Cir. 2011). Indeed, each level performed its own review and reached its own decision.

### 1. Kent Did Not Act with Discriminatory Animus Towards Dr. Han.

Dr. Han repeatedly references a January 2022 e-mail from Kent with the phrase "medical shit," arguing that it creates a dispute of material fact to prevent dismissal of Dr. Han's disability discrimination claim. However, he fails to provide the Court with the context surrounding this e-mail. The e-mail followed a question from Dr. Han to the Dean's Office regarding Temple's decision to conduct classes virtually for the first two weeks of the spring 2022 semester following a COVID spike. See SOF Exhibit LLLL. Dr. Han already was scheduled to teach a class in person in spring 2022, and taught his classes in person in fall 2021. Following the "two weeks of virtual classes" announcement, Dr. Han contacted the Dean's Office to clarify whether his in-person statistics course would also be virtual for those two weeks. Id. He requested that if Temple did not intend the two weeks to be virtual, that his course be moved online. Id. The undisputed facts demonstrate that Dr. Han did *not* previously request an accommodation to teach the class virtually, and, by submitting his question a week before classes started, caused confusion about whether he sought to teach two weeks or the whole semester virtually. See Exhibit 3: Kent Tr. (11/19/2024) at 145:8-24; 146:1-22.

The Third Circuit has held that "stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of the decision." Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992). Kent did not make the "medical shit" comment in connection with the decision process for Dr. Han's tenure application. Kent's stray

8

remark amid confusion over virtual teaching was unrelated to Dr. Han's application, and, thus does not create a disputed issue of material fact that supports an inference of discrimination.

> 2. **The Decision Not to Allow In-Person Meetings with the Candidates Does Not Create a Dispute of Material Fact Concerning Pretext.**

During his 2019-2020 tenure application review process, Dr. Sarkar and Dr. Han attended tenure committee meetings in person to promote Dr. Han's application. During Dr. Han's second tenure review process, the Dean's Office prohibited all candidates, not just Dr. Han, from meeting with the committees in person. Anderson – a governance and internal controls expert – testified that he had been trying to implement procedures to prevent these face-to-face communications with the committees since his first year as Dean because they reduce the objectiveness of the evaluation. See SOF ¶ 25 and Plaintiff's SOF ¶ 17. The administration did not make the decision to disallow in person meetings to discriminate against Dr. Han and prevent him from explaining his medical problems. Dr. Steven Balsam, Chair of the School Committee, testified that, in 2021, no tenure or promotion candidates presented their applications in person to the School Committee. See SOF ¶ 22. Further, Provost Mandel testified that when Dr. Han contacted the Provost's Office to schedule an in-person meeting, he declined to meet in person because he did not want to deviate from the tenure process to ensure equity and fair treatment for all the candidates. See Exhibit 2 at 17:3-25; 18:1-17. Provost Joanne Epps observed the same practice. Id. Dr. Han has presented no facts demonstrating that the decision not to allow candidate meetings creates a genuine dispute preventing dismissal.

> 3. **Dr. Sarkar's Decision Not to Inform the External Reviewers of Dr. Han's Medical Condition is Not Evidence of Pretext.**

During Dr. Han's first tenure review process in 2019-2020, an external reviewer contacted Dr. Sarkar regarding Dr. Han's tenure timeline. Dr. Sarkar and Kent discussed

9

whether to disclose Dr. Han's health condition.³  See Plaintiff's SOF ¶¶ 10-11.  After describing this situation as a "touchy one," Kent informed Dr. Sarkar that he should disclose this information only if a reviewer makes an inquiry, to avoid influencing them in either direction. See SOF Exhibit VV.  However, Dr. Sarkar understood this directive from Kent to mean he should not inform the external reviewers of Dr. Han's medical condition and leaves.  See Plaintiff's SOF ¶12.  Dr. Han contorts this exchange, asserting that Kent should have instructed Dr. Sarkar to explain the circumstances of Dr. Han's tenure clock.  There is no genuine dispute of material fact, however, because:

- The record does not reflect that Kent's classification of Dr. Han's FMLA leave as "the" FMLA year, rather than two years of leave, was made with mal intent.  Kent was responding to Dr. Sarkar's e-mail, in which *Dr. Sarkar* stated that Dr. Han's tenure clock had been extended for "a" year.  See SOF Exhibit VV.  Kent responded in the same manner as the information given to him.  Despite this miscommunication that originated with Dr. Sarkar, Kent made the proper instruction that Dr. Han's body of work should be reviewed "as though it happened in a 6-year time frame."  Id.

- Dr. Sarkar decided not to inform the external reviewers of Dr. Han's medical history and tenure timeline.  Dr. Sarkar was Dr. Han's most dedicated supporter throughout *both* of his tenure applications, and Dr. Han has never alleged that Dr. Sarkar displayed animosity towards him.

- Dr. Han believes the failure to inform the external reviewers of his tenure timeline impacted the committee evaluations.  However, Dr. Han presented no evidence that the Department Committee was unaware of his medical leaves independent of the tenure application.  Rather,

---

³ Dr. Han had not yet included his medical history in his tenure application.

the undisputed facts demonstrate exactly the opposite. See SOF ¶ 22 (Department member agreed to accommodate Dr. Han's medical condition by changing his lecture schedule). Moreover, during his second application, Dr. Han included this information in his CV with a medical statement, ensuring every level of review had access to it.

### 4. Dr. Han Was Given the Opportunity to Address His Belated Disclosure to the Provost.

Dr. Han argues that Anderson's failure to consider the tentative acceptance of an "A-" journal article in the midst of the application review process creates a disputed issue of material fact, preventing summary judgment. See SOF Exhibit MMMM; see also SOF Exhibit I. It does not.

First, the tentative publication was in an "A-," not in an "A" journal, a fact that Dr. Han does not dispute. The 2018 Guidelines require at least four publications in "A" journals. Dr. Han never had four "A" journal publications – the bare minimum. Second, the Dean's Office already had finalized the Dean's letter at the time Dr. Han contacted Kent concerning the tentatively accepted "A-" publication. See Plaintiff's SOF at ¶104. However, to ensure that the subsequent reviewers had this new information, Kent invited Dr. Han to address the forthcoming publication in his rebuttal letter to the Provost to allow the Provost to take this additional publication under consideration, which Dr. Han did. See Exhibit 4: Rebuttal to the Dean at 1. These facts are undisputed, and no reasonable factfinder could infer discrimination where the Dean did not consider a tentative publication in an A- journal that Dr. Han failed to present until the day the recommendation letters were transmitted.

### D. Plaintiff's Spoliation Argument Is Not Evidence of Discriminatory Intent.

As an afterthought, Dr. Han alleges, without basis or citation to the facts, that Temple's failure to institute a litigation hold on Dr. Han's e-mails is evidence of pretext. Under Temple

policy, the e-mails of former employees are deleted after 45 days. Temple failed to place a litigation hold on Dr. Han's e-mails following his non-renewal of employment. Despite this mistake, Temple rebuilt Dr. Han's e-mail box and provided Dr. Han with all relevant discoverable information. Temple reviewed the e-mail boxes for more than 20 individual custodians and produced over 16,000 pages of documents. Temple also permitted Dr. Han's attorney to take the fifteen depositions he requested. The litigation hold issue has no connection to Dr. Han's claims of discrimination. See Laverty v. Drexel Univ. 2016 U.S. Dist. LEXIS 6909, at *23 (E.D. Pa. Jan. 21, 2016) (holding that even when such mistakes and errors have occurred, it is not enough to persuade the court that defendant's legitimate, non-discriminatory reason was not the genuine reason for the adverse employment action).

Following a cooperative discovery phase, Dr. Han did not file a motion for sanctions against Temple alleging spoliation of evidence and never attempted to elicit facts that might support his claim that the inadvertent deletion constituted evidence of discrimination. If Dr. Han truly believed the inadvertent deletion impacted claims, he would not have waited to raise the issue until his *Opposition*. He did not raise it because neither prejudice nor discriminatory intent exists.

### III.    CONCLUSION

Dr. Han's disagreement with Temple's decision to deny him tenure is not sufficient to create a *genuine* dispute of *material* fact. Regardless of whether Dr. Han believes that he was qualified, the majority of individuals in a twenty-person tenure review process believed otherwise. Because no dispute of material fact exists preventing dismissal, Temple is entitled to summary judgment.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| XU HAN : <br> : <br> *Plaintiff*, : <br> : <br> v. : <br> : <br> TEMPLE UNIVERSITY : <br> : <br> *Defendant*. : <br> : | Civil Action No. 2:23-cv-04433-JDW |

**CERTIFICATION OF COUNSEL AS TO LENGTH OF BRIEF**

I hereby certify that Temple University's Reply Brief in Support of Its Motion for Summary Judgment filed on June 3, 2025, has a total word count of 3,479 words, according to Microsoft Word's word count tool.

Dated: June 3, 2025

*/s/ Domenica B. Tomasetti*
Michael J. Fortunato, Esquire
PA ID No.: 58917
mfortunato@rubinfortunato.com
Rachael Luken Carp, Esquire
PA ID No.: 201585
rcarp@rubinfortunato.com
Domenica B. Tomasetti, Esquire
PA ID No. 333913
dtomasetti@rubinfortunato.com
1200 Liberty Ridge Drive, Suite 220
Wayne, PA 19087
Telephone (610) 408-2005/2010/2045
Facsimile (610) 854-4305/4329/4304

*Attorneys for Defendant Temple University – of the Commonwealth System of Higher Education*